May it please the Court. Richard Scheer, Law Firm Schicardi & Bacon, Counsel for the Appellant, Hibu, Inc. Your Honors, thank you for the opportunity to present today. At this time, I'd like to reserve three minutes for rebuttal. The District Court's order needs to be reversed because my client is entitled to offer evidence supporting application of the equitable tolling doctrine. The law in this circuit, in California body of law that decides the contours of whether equitable tolling should apply, says that it is a fact-intensive inquiry that's determined based on evidence, not at the initial pleading stage. The District Court found that my client was not entitled to equitable tolling based on Plotkin's initial pleading-based motion. There was no opportunity to amend. There was no opportunity to present evidence or have our day in court. We simply, there was a pleading, initial pleading challenge, and the Court ruled as a matter of, presumably, on the pleadings and that we weren't entitled to show equitable tolling applied to the facts and circumstances of this case. The District Court, in doing that, and we'll take a look at the Court's order to show why they failed to follow the proper mechanics and, for lack of a better term, failed to follow the necessary mother may eyes that are required under California law. The District Court reached its conclusion without applying the mandatory three-part test to determine whether equitable tolling applies, as prescribed by this Court in the Cervantes and the Davidson v. Columbia HCA health care decisions. The District Court was prejudging evidence that was not in the record. My client was entitled to present evidence, even if it was ultimately unsuccessful. You know, it's important, this case is important to determine the contours of the equitable tolling doctrine, but the Court doesn't necessarily need to determine the contours of the doctrine, I assume. No, Your Honor, I was just going to say while it has implications for that, to reverse and remand consistent with this Court's directives, it doesn't need to determine that the equitable tolling doctrine applies. All it needs to do is remand to allow my client to present the necessary factual evidence and have the Court apply the three-pronged, fact-intensive inquiry that's been prescribed by this Court, which it failed to do on an initial pleading stage ruling on the initial dispositive motion that was filed against our complaint. Our contention is that the Court, in doing so, was prejudging evidence that wasn't in the record, as my client didn't get any opportunity to submit affidavits, to present evidence, witness testimony, conduct the necessary depositions to be able to show that the equitable tolling doctrine applies to the facts and circumstances of this particular case. Equitable tolling is a fairness doctrine that deals with rules that don't fully answer the questions. You know, I really don't think this case deserved 15 minutes for oral argument, and you've pretty much given us your argument. I'm not suggesting you stop now, but I would suggest that you sort of limit the argument to the necessary period rather than the amount of time the clerk allotted to this. Absolutely, Your Honor. I have a couple other subpoints, and be sure to answer any questions, but I agree, it's a fairly succinct issue. If you take a look at the District Court's order that was in the record, page 3 and 4, the order that dismisses the initial complaint, as I said, fails to follow the proper mechanics. It says in page 3 of the order that these contracts were breached on January 20, 2009, and therefore the statute of limitations to this claim expired. These were conclusory statements that were reached without any analysis, without any discussion of the factors that were set forth in the Davidin decision, and didn't apply any of the factors or even state a reason why. They make two factual findings in the court's order. At the bottom of page 3, the doctrine does not apply as plaintiff has not demonstrated it should be invoked to ensure fundamental practicality and fairness, nor does the plaintiff show it could pursue various remedies for its breach of contract claim, and has only pursued one in good faith. The court was prejudging evidence that wasn't in the record. The court had the authority under Rule 12d to convert this to a summary judgment motion, whereas under 56d, then, my client would have had a ruling delayed while it had an opportunity to have it stay in court, present necessary evidence to show why all three prongs of the equitable tolling doctrine can be met, and my client would be allowed to proceed on the merits with its claims. The Hatfield v. Halifax decision, also from this court, says that those three prongs, one, timely notice to the defendant in filing of the first action, two, a lack of prejudice to the defendant in gathering evidence to defend against the second claim, and three, good faith and reasonable conduct by the plaintiff in bringing a second claim. All those factors are easily met here. We undisputably filed, well within the statute of limitations period, a superior court action for $320,000 for the services that my client rendered to Plotkin Financial. Only at that time did we refrain from fully adjudicating those claims on the merits by agreeing to accept a settlement offer right before the eve of trial. It was at that time the case was dismissed, the underlying superior court action, because we had agreed to a settlement. We relied on that representation from Plotkin Financial. They wanted to reach a settlement to avoid going forward and proceeding with trial. They had said they provided that they could honor that settlement, but they needed three consecutive annual installments to consummate the settlement agreement. When after that period it became evident that Plotkin Financial wasn't going to honor the settlement, we had an absolute right to proceed with our claim, and the case law and the body of law from this circuit provide that for us to do that. We had good faith, reasonable conduct. We have had to sue twice now to enforce Plotkin Financial's contractual obligations, and only because we relied on that representation that was made by Plotkin Financial that we did not go forward with a superior court action and take the cases all the way through trial. Well, the district court said that HEBU failed to prove that equitable tolling should be invoked to ensure fundamental practicality and fairness. Now, you did get $75,000, finally, right? Your Honor, it's correct. Your client did. They stipulated. We have not been paid, but they stipulated. Still no money has come in? No, ma'am. All right, thank you. Your Honor, that's correct. But, you know, taking a look at this at an absolute minimum, like we should have given an opportunity to present evidence, to present our case to show that it applied, but just taking for argument's sake, let's say that the district court was within its rights to dismiss at the initial pleading stage, at the absolute minimum we should have been afforded leave to amend. The district court failed to give us leave to amend without addressing the factors necessary. As I pointed out in page 3 and 4 of the court's order, they made two factual findings without giving us an opportunity to present evidence, nor did they give us an opportunity to amend, and they didn't state the reasons why. That alone subjects the court to reversal. The Briggs v. Pace Ninth Circuit decision says that trial courts should determine whether to allow leave to amend by ascertaining the presence of four facts, bad faith, undue delay, prejudice to the opposing party, and futility. Those aren't referenced or even considered in the district court's order. At an absolute minimum, it should be remanded, and the court should explain why they denied leave to amend at initial pleading. And at a maximum? I'm sorry, Your Honor? At a maximum. You said at a minimum it should be remanded to let the district court explain its decision. To explain its decision. At a maximum, what relief were you seeking? At a maximum, it should be overturned and allow us to have our opportunity to have our day in court and present our claims. The district court should be directed to allow you to amend? Absolutely, Your Honor, at a minimum, if amendment is even necessary. You know, the court could have converted it to a summary judgment motion, given us an opportunity to present evidence. Our position is that there is a very distinct difference in setting forth viable claims for a cause of action to sustain your claim in a notice pleading. We clearly did that in filing our complaint with the district court. That district court conflated that with evidence that needs to be presented, whether verification through affidavits, through testimony, other documents. And it was conflated in this case. We attached exhibits. We filed a complaint that sets out what is required to set forth a necessary claim to go forward. But that's not the same thing as having the opportunity to present evidence before the court and show that the equitable tolling doctrine applies. All right. Thank you, counsel. Thank you. Thank you. Good morning, Your Honor. May it please the court. My name is Andrew Collari of Collari and Summers. Would you speak up, please? Yes. My name is Andrew Collari from Collari and Summers. I represent the appellee, Plotkin Financial. And the district court ruling in this case should be affirmed. And I think all this talk about presenting evidence, it's completely inapplicable here. And let me start with the primary focus of this appeal is the doctrine of equitable tolling. And we start with the California Supreme Court case in McDonald v. Antelope Valley. It's on page 18 of our brief. And this is really the linchpin of this appeal, which is that the doctrine applies, quote, when an injured person has several legal remedies and reasonably and in good faith pursues one. And that's 45 Calforth 88. It's at page 100. It's 2008. It's the California Supreme Court case. I don't think there can be any dispute that that's the standard. And what HIBU is doing here is jumping to the next step, which says we need to look at these three prongs. And the problem with that analysis and the three prongs being timely notice to Plotkin, the lack of prejudice to Plotkin of the first action, and the good faith conduct by the plaintiff. But you don't even get there. If you don't have two remedies at the outset and you pursue one to the exclusion of the other. The most common example, which we point out in our brief, is where someone has to pursue administrative remedies before it can file for the case. And so let's say that administrative remedy, you know, gets dragged on and they end up filing the case later than the statute. They say, wait a minute. It's told during the time when they're pursuing the administrative remedies. That's not this case. And. Well, you cited to the Arnold case. But in the Arnold case, there wasn't a brief of the settlement agreement, was there? Which case is this, Your Honor? Arnold v. U.S. You cited to another Arnold, I guess. I cited to McDonald v. Antelope Valley. All right. I apologize if I wasn't clear. I'm referring now to Arnold v. United States. A Ninth Circuit case, 816 Fed Second 1306. The court recognized that normally a party enters into a settlement agreement knowingly and voluntarily. The agreement is treated as a binding contract and the party is precluded from raising the underlying claims. And I'm suggesting, although that's a Ninth Circuit case, the rule doesn't apply where there has been a breach of the settlement agreement. And isn't that what happened in this case? Well, I think that's a different issue. The issue here, and there's a lot of conduct by HIBU that is not being brought to the court's attention, but here you had a settlement agreement. You had an agreement between counsel where the parties settled and they said, Plotkin Financial, and this is super important in the case of equitable tolling, because if you look at the timeline, the timeline is crucial. You have the case is filed. You've got these ad contracts, 2006 to 2008. The alleged breach is on January 20, 2009. And so there can't be any dispute that they had four years to sue, which is January 20 of 2013. That's not really a factual finding. That's clear in their pleadings. But this is what's important about the settlement, and this will be very short. The case was filed in July of 2010, which is about 18 months into the four-year statute. Less than two years later, the case settled. We're in February of 2012. Now, on March 2, Plotkin Financial, so we had the e-mails that said, we'll settle for $75,000, three payments of $25,000 secured. On March 2, I sent an e-mail to my colleague that said, Plotkin has the first $25,000. We need to know who to make the check payable to, and we're still waiting for the settlement agreement. This is in the record on HIBU 104, right in the middle. The response was on 103, please make the check payable to Yellow Book, deliver it to our attention. The settlement agreement will be finalized and delivered to your attention during the first part of next week. We never got a settlement agreement until September of 2014. 31 months later, we got a settlement agreement, and it was attached to the federal court complaint. So there's no doubt it was unsigned, because we never got it, and we're certainly not going to send our payment when we haven't gotten a settlement agreement. And this is what's important. So you've got this, starting with that March 2, 2012. The case is settled, the case is dismissed, or the notice of settlement was filed. What I just read was we have the first $25,000. Who do we make it payable to, and where's the settlement agreement? Now, about six weeks later, April 27, 2012, there's an OSC raid dismissal, and that's in the record HIBU 25 through HIBU 28. It's the online docket. So this is really important. So April 27, we have an OSC raid dismissal. We don't show up. They don't show up. Case gets dismissed. We have the settlement. We're still waiting for the settlement agreement. Nobody's panicking at that point, but it's been six weeks. June 18, 2012, there's a dismissal filed, and that's on page HIBU 25. 6-18-2012, notice of results of 4-27-12 hearing. So there the Los Angeles Council files a notice of dismissal. So now we're at June of 2012. So we're over three months past my email that says we have the $25,000. Where's the settlement agreement? They're aware of what's going on. They filed a notice of dismissal. Now, if we stop there, June of 2012, we're four months after the settlement, and we're two months after the dismissal. I mentioned no defendant's going to make a payment without the agreement. So they've got their ---- Are you talking about equitable estoppel? Well, that's part of it. They brought up in their reply, for the first time in the reply, equitable estoppel, which isn't in their briefs. It's not in their opening brief, and it wasn't presented to the district court. It's completely different than equitable tolling. See, equitable tolling requires the two remedies, which they didn't have. The equitable estoppel is somehow they said ---- I'm sorry, I meant equitable tolling. Somehow they're saying that we induced the delay. But there wasn't any delay that was induced by Plotkin Financial. But if you just bear with me one more minute, is if we get to ---- we have that March of 2012 correspondence that I referenced. I think it was with Mr. Scheer or his colleague. The next thing I hear from them is April of 2013. So they let 13 months go by, and that's in the record at, I believe it's 146. It's not equitable tolling. It is. It's Exhibit E to the federal court complaint, HIBU 146-147. Thirteen months later, I get a letter from Mr. Scheer that basically says, as you're aware, we have a settlement for $75,000. The correspondence is enough, I'm paraphrasing, to have this enforced. No mention about a settlement agreement, like we sent you that settlement agreement. What happened to it? And even if they did, if we didn't sign it, I don't know why they're sitting around for 13 months. But what's important is in the interim, in August of 2012, the principal of Plotkin Financial, Dory Plotkin, a quadriplegic who had been a quadriplegic for 14 years, he died. He died in August of 2012. So we were February to August. We're seven months after the settlement. We never got a settlement agreement. Our guy dies. You know, he wasn't an individual signer to the settlement agreement. He wouldn't have been. It was just Plotkin Financial. So we get to April of 2013 with that, and I believe I had a conversation with Mr. Scheer that said, you know, this company, you know, the principal has died. It's really essentially not operating. But that was really the extent of it. And then we've got, then we wait, then we go until September of 2014. So you had this 13-month delay from March of 2012 to April of 2013. Then you have that one-letter Exhibit E, HIBU 146. Then you have a 17-month delay between April of 2013 and September of 2014. And there's no doubt that they didn't lose their right to enforce the settlement. If we didn't make the first installment, sure. No one said there was a statute of limitations defense against the settlement. We stipulated to judgment for 75. What our complaint here is, is you don't get to go back to the underlying contracts. I think, Your Honor, that was your point, is the settlement has been breached, but arguably it hasn't been breached when they never gave us a settlement agreement. We had an agreement. They're really in breach for not providing the agreement. But in the interim, the principal dies, and here we are. If they wanted to go back, they certainly could have enforced the settlement in the L.A. action. It happens all the time under 664.6, that you have a settlement and you can enforce it. Summary, what do you get? You get your judgment for the settlement amount. But they also had six months, and this is footnote two in our brief, they had six months to vacate that dismissal, which is October of 2012. So between the date of the settlement, or let's just use my saying, we got the $25,000 ready, he still had April, May, June, July, August, September, seven more months to just go back into the L.A. case and say, you know what, we want to vacate the dismissal. We want to go back to the $320,000 claim. That was one of their options. They didn't do it. And even when they didn't do that, so in October of 2012, they could no longer reopen the L.A. action. And that's jurisdictional. It's like if you miss a notice of appeal, you file it 31 days. It's gone. There's no excuses. So they couldn't get back into L.A. But this is a distinguishing factor from all the cases that deal with equitable tolling, not to mention the concurrent claims in pursuing one, is in all the cases that I reviewed, there's never a case where at the time the first case was dismissed, that the statute of limitations wasn't already expired. And you look at cases where it's filed like a week later or two weeks later. There's a couple of cases I could get if you want examples. But here the case was dismissed in April of 2012. They filed their suit in September of 2014. It's unfathomable. But they had until January of 2013. They could have filed the federal court case that we're in, and we wouldn't have had a statute of limitations defense. So they had so many safeguards that aren't present in any of the cases that they cite were equitable tolling. I mean, their first problem is they don't have concurrent remedies at the outset where they pursue one to the exclusion of the other. The second one is when this case was dismissed, they still had nine or ten months to bring this very case, and they didn't. And so when you get into the equitable part of it, it's not inequitable to rule on the statute. I don't see, to address a couple of points that Mr. Shearer made, I think it's clear under the cases, and it's in our brief pages 18 to 21, you don't get to the three-prong analysis unless you have the multiple remedies. That's number one. Number two, they keep saying that the judge didn't accept their factual allegations as true, but they don't point to any where the court said this isn't true or that they weighed anything. I don't see the court doing any of that stuff. There's no doubt the court didn't look at the three prongs. It didn't look at the three prongs because under the case law and under McDonald, if you don't have multiple remedies, and you look at my cases that we cite between pages 18 and 21, and they're factually distinguishable, but neither of us has a case that's directly on point, but the rule of law is very, very solid. As Your Honor mentioned at the outset, we're not here to debate what the contours of the equitable tolling doctrine is. You need those two remedies at once, and you have to pursue one. And when you do that, then we look at notice to the defendant because of the first case. We look at prejudice to the defendant because of the first case, and we look at the good-faith action of the plaintiff. Here we don't have to look at that, and I don't want to create a triable issue of fact by saying they didn't act in good faith. The facts are what they are. The facts are really undisputed here, and the judge, from everything I can see, accepted all of their facts as true. They didn't plead equitable tolling. I would like to mention that in their statement of issues in No. 2, their second issue says, whether judgment on the pleading is based solely on the applicable statute of limitations is proper, where HIBU alleged equitable tolling of the statute of limitations in its complaint. That's a false statement. In this 12-page district court complaint, HIBU 40 through 51, they don't allege equitable tolling in here. They don't try to say they acted in good faith or that there was anything like that. That's something they came up with in opposition to the motion for judgment on the pleadings. So I think we've addressed all of the issues in the papers, and I think the district court case should be affirmed. Equitable tolling was waived? Excuse me? Are you saying equitable tolling was waived? I don't think it was waived in the appeal. What I'm saying is they didn't bring it, they didn't allege it. They brought it up in opposition to the motion for judgment on the pleadings. So I'm not saying that they waived it. Are you saying that is improper, that that does not preserve equitable tolling? I don't. Bring it up in opposition to the motion to dismiss? No, I don't. We didn't make that argument. I'm not saying that, but my point is here is that. Why are you telling us? Because one of the disputes we have is our statement of issues is different than theirs, and it's because they don't acknowledge that you have to have the two remedies, and they falsely claim that they pled that, and they didn't. So the district court wasn't – the importance of it, Your Honor, is that the district court wasn't ignoring their allegations or weighing them or prejudging the facts because they weren't alleged. But equitable tolling was before the district court, and equitable tolling was a matter the district court had to dispose of. Yes. And there is a way to do that. There is. And they did it by saying you didn't have. Applying the three factors. No, you don't get to the three factors if you don't have several legal remedies at the outset. And that's the key here. And that basic argument that they didn't have. That's our basic argument. And if the court disagrees with us, I mean, there's no doubt that those three factors are fact-intensive. But I don't see any case that says you don't have to have several legal remedies at the outset. It's over and over. Every case cites it the same way. And that's what the district court relied on. Your basic argument, then, I now understand, I think, is that there were not several legal remedies available, only one. They had a breach of contract action, and they could have filed it in diversity. Filed it what? They could have filed it in federal court under diversity, or they could have filed state court. But those aren't concurrent remedies that you can file at the same time. They just chose state court, pursued it to settlement. Settlement fell apart, as we discussed. And they still had seven, eight, nine, ten months to bring this case. But for some reason, they waited 31 months. There's just no basis for equitable tolling. And it doesn't matter what they want to plead. There's no evidence that could support the doctrine. Thank you. Thank you. Just briefly, your honors. I think it's pretty evident that my colleagues' arguments only exemplify that this is a factual dispute. First of all, HIBU could have filed in superior court, which it did. It could have filed in district court. There are multiple alternative dispute resolution tribunals. It could have brought its claim in. But it brought its claim in superior court well within the statute of limitations period. The action was dismissed just based on a representation that they were going to honor a settlement right before trial. And the law is pretty clear that statute of limitations does not protect a defendant who caused that delay. The Langdon decision supports that. Now, there are a multitude of facts or reasons to address Mr. Kalari's reasons for the delay. The settlement was secured by unencumbered realty that was offered a deed of trust. There are research issues with that. There was a myriad of issues that are subject to discovery before the court makes a determination that equitable tolling doesn't apply. Obviously, that wasn't presented in the initial complaint filed in district court. But the district court does set forth, the complaint does set forth all the factors showing that we filed initially well within the statute of limitations and that we would have gone forward and adjudicated those claims on the merits but for the representations of block and financial. Thank you. Do you have anything else? Unless the court has any other questions, I just briefly would like to address Mr. Plotkin's authority that he relied on. It should only take about a minute and then I'll be done. We had invited Plotkin Financial to point the court to any authority supporting the idea that HIBU's claim for equitable tolling fails as a matter of law. As I said, the district's court order didn't cite to any authority saying that it was saying equitable tolling didn't apply as a matter of law, the inference being that it made factual findings that weren't in the record. The authority that Plotkin relied on in their briefing completely in opposite and manifestly different than the facts and circumstances of this case. As you had referenced, Your Honor, they cite cases like the Adelstein, a bankruptcy case in Arizona. That dealt with a fully satisfied agreement. The IRS tried to go back and seek relief of post-petition penalties and interest after the parties had already consummated a settlement agreement. That certainly wasn't the case here. And same with the Gillian case, the Thomas Gillian case. That case, manifestly different. But that does say that HIBU confirms our position. Equitable tolling is a fact-intensive equity and it's not to be determined at the initial pleading stage. Your Honor, we're just asking for the opportunity to present facts to support our case and ask that the district court's order be reversed and remanded. And a simple denial of leave to amend without explanation can subject the district court to reversal alone. And that was done in this case. There was no explanation. Thank you, Your Honor, for your time to present today. Thank you, counsel. Thank you both. The case is submitted.
judges: D.W. Nelson, Reinhardt, Steeh